UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 700 CAMP STREET, LLC, <br><br> Plaintiff, <br><br> -against- <br><br> MT HAWLEY INSURANCE COMPANY, <br><br> Defendant. | 24-cv-3060 (AS) <br><br> <u>OPINION AND ORDER</u> |

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

Plaintiff 700 Camp Street alleges that its insurer, Mt. Hawley Insurance Company, breached its insurance contract by failing to cover property damage sustained during Hurricane Ida back in 2021. Dkt. 1-2 ¶¶ 7–12. Camp Street says it "reported the claim" to Mt. Hawley "in August of 2023," "[w]ithin days of learning" that Hurricane Ida had caused the damage. Dkt. 32 at 14.

Mt. Hawley now moves for judgment on the pleadings, arguing that Camp Street reported its claim for coverage a year too late. Dkt. 30 at 1. Mt. Hawley points to a clause in the insurance policy explaining that "[i]n no event may a claim be filed with us later than one year after the date of the loss or damage that is the subject of the claim." Dkt. 31-1 at 110. Because Camp Street did not file its claim for damage occurring in 2021 until 2023, Mt. Hawley says Camp Street cannot sue.

This case was removed from Louisiana state court to the Eastern District of Louisiana on October 18, 2023. Dkt. 1. That court then granted Mt. Hawley's motion to transfer venue to the Southern District of New York. Dkt. 14. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, Camp Street's sole member is a citizen of Louisiana, and Mt. Hawley is incorporated and has its principal place of business in Illinois. Dkt. 1 ¶¶ 4–10, 12–13.

## LEGAL STANDARDS

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (citation omitted). "To survive a Rule 12(c) motion, the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (cleaned up).

## DISCUSSION

Mt. Hawley insists that this is an easy case: it says that Camp Street failed to comply with the notice provision in its policy and so cannot sue. Although Camp Street disputes exactly what materials the Court can consider, it concedes that the Court can consider the insurance policy. Dkt. 32 at 6. And that policy, Mt. Hawley points out, has a one-year outer limit on notice to the insurer, which Camp Street blew past.

The "Windstorm or Hail Loss Reporting Limitation Addendum" states that "[r]egardless of anything to the contrary in the policy to which this endorsement is attached, the following limitations apply":

> With respect to loss or damage caused by windstorm or hail, including any named storm, you must give us prompt notice of the loss or damage and include a description of the property involved, and as soon as possible give us a description of how, when and where the loss or damage occurred. In no event may a claim be filed with us later than one year after the date of the loss or damage that is the subject of the claim.

Dkt. 31-1 at 110.

The policy also provides that "questions related to the [policy's] validity, interpretation, performance and enforcement" are to be determined by New York law. *Id.* at 115. "Compliance with a notice provision contained in an insurance contract is a condition precedent to recovery under New York law." *Sphere Drake Ins. Co. v. Y.L. Realty Co.*, 990 F. Supp. 240, 242 (S.D.N.Y. 1997). So, Mt. Hawley argues, under New York law, Camp Street's claim is foreclosed by its noncompliance with the one-year notice provision in the addendum.

This argument is straightforward enough. But things got complicated after the motion was briefed. Although the parties seemingly agreed in their briefs that New York law applied based on the choice-of-law provision, the Court noticed some irregularities. The policy does not have anything to do with New York. It was issued and delivered in Louisiana, and covers property located in Louisiana. And Louisiana law prohibits policies issued or delivered in Louisiana from containing an agreement that the policy "be construed according to the laws of any other state or country." La. Stat. Ann. § 22:868(A)(1).

In response to the Court's request, the parties addressed whether Louisiana law has any bearing on this case. Mt. Hawley says that Louisiana law is irrelevant because the parties chose New York law, and according to Mt. Hawley, the New York Court of Appeals has made clear that when the parties choose New York law, New York substantive law applies, full stop. *Ministers & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 474 (2015) (holding that "courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract"). At the same time, Mt. Hawley seemed to contradict its position: it explained that a separate endorsement to the policy titled "Louisiana Changes" was added because it was required by Louisiana law. Dkt.

2

39 at 2 ("Inclusion of the endorsement is required of all property policies entered into in Louisiana . . . ." (quoting *Burk Holding Co. v. Mt. Hawley Ins. Co.*, 2023 WL 183898, at *4 (E.D. La. Jan. 13, 2023))).

Camp Street, for its part, now argues that Louisiana law governs the policy because the policy was "delivered or issued for delivery in Louisiana." *See* La. Stat. Ann. § 22:868(A)(1). And, says Camp Street, Louisiana law forecloses Mt. Hawley's notice-provision argument for two reasons: First, Louisiana law prohibits one-year notice provisions like the one at issue here. Second, it requires insurers to demonstrate that an insured's failure to comply with a notice provision prejudiced the insurer before the insurer can deny coverage.

To add another wrinkle, the parties' arguments about the application of Louisiana law implicate an open question of New York law. As Mt. Hawley points out, if parties choose New York law in a contract, New York courts must enforce the provision rather than engage in a conflicts analysis. *See Ministers*, 26 N.Y.3d at 474. But the New York Court of Appeals has not addressed whether this rule yields to the common-law "public-policy exception," under which courts enforce the parties' chosen law unless its application "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." Restatement (Second) of Conflict of L. § 187(2)(b) (Am. L. Inst. 1971).

In *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, the Second Circuit recognized this "possible exception" to the *Ministers* rule. 51 F. 4th 456, 472 (2d Cir. 2022). If the public-policy exception were in play, the court recognized, Venezuelan law might govern the validity of notes issued by Venezuela's state-owned oil company, even though the governing documents contained a choice-of-law provision selecting New York law. *Id.* at 473. The court certified to the New York Court of Appeals the question whether any principle of New York common law required application of Venezuelan law. *Id.* at 475. The Court of Appeals determined that the notes' validity was governed by Venezuelan law based on a New York statute, so it declined to answer the certified question about the common-law public-policy exception. *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, 235 N.E.3d 949, 955, 961 (N.Y. 2024).

Absent clear guidance from the New York Court of Appeals about this issue, the Court "is bound to apply the law as interpreted by [the] state's intermediate appellate courts." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). New York intermediate courts provide reason to think that New York courts recognize the public-policy exception, and that the exception would bar enforcement of the choice-of-law provision here. In *North American Elite Insurance Company v. Space Needle, LLC*, a New York appellate court concluded that an insurance policy's choice-of-law provision was likely void based on a Washington law that prohibited the inclusion of such provisions in policies sold in Washington. 159 N.Y.S.3d 396, 397 (1st Dep't 2021). "As an insurance company authorized to sell insurance in Washington," the court explained, "plaintiff was required to comply with the Washington Insurance Code's prohibition against choice-of-law and forum selection clauses in insurance policies sold in Washington," rather than make "a blatant end

3

run around Washington's prohibition against [such] clauses." *Id.* (internal quotation marks omitted). As the Second Circuit recognized, this decision may have been "undergird[ed]" by the common-law public-policy exception. *Petróleos de Venezuela, S.A.*, 51 F. 4th at 473.

As Camp Street argues, whether Louisiana or New York law applies here potentially matters for two reasons. First, for policies "delivered or issued for delivery in" Louisiana, Louisiana law prohibits policies from limiting "right of action against the insurer to a period of less than twenty-four months next after inception of the loss." La. Stat. Ann. § 22:868(B). There are at least some cases suggesting that a one-year notice provision is unenforceable due to this prohibition. The argument goes like this: if Louisiana law requires that insureds have two years to file suit against an insurer, but a policy forecloses suits, even when filed within two years, where notice wasn't furnished within one year, the policy limits "right of action against the insurer to a period of less than twenty-four months." *See Plain v. Safeco Ins. Co. of Or.*, 2024 WL 3641364, at *6 (M.D. La. Aug. 1, 2024) (reviewing these decisions). Second, Louisiana may be more forgiving than New York when it comes to noncompliance with notice periods. In some circumstances, equitable principles might require an insurance company to show that the insured's delay in providing notice prejudiced the company before the company can deny coverage. *See Jackson v. State Farm Mut. Aut. Ins. Co.*, 29 So.2d 177, 179 (La. 1946). Interpreting Louisiana law, however, the Fifth Circuit has determined that no showing of prejudice is required when the insured is a "sophisticated entity." *Bridgefield Cas. Ins. Co. v. River Oaks Mgmt.*, 590 F. App'x 308, 314 (5th Cir. 2014) ("[T]his court has interpreted Louisiana law to hold that failure to comply with a notice requirement that is a condition precedent to coverage precludes coverage, at least where the insured is a sophisticated entity.").

The problem is that the parties did not brief most of these issues, except in short supplemental letters filed at the Court's request. And in those supplemental letters, the parties presented "matters outside the pleadings" that might bear on the Court's analysis, such as the factual issue of why the "Louisiana Changes" endorsement was added to the policy. *See Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleading for purposes of Rule 12(b)."). Faced with matters outside the pleadings, the Court has two options under Federal Rule of Civil Procedure 12(d). First, the Court can exclude the matters and resolve the motion. Second, the Court can convert the motion into one for summary judgment under Rule 56. If the Court takes the second route, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court elects to convert Mt. Hawley's motion for judgment on the pleadings into one for summary judgment under Rule 56. The parties are afforded until Tuesday, January 21, 2025, to conduct discovery. On or before Tuesday, February 4, 2025, the parties may each move for summary judgment. The Court will then decide whether summary judgment is warranted based on these or any other issues in the case.

## CONCLUSION

For the reasons above, Mt. Hawley's motion for judgment on the pleadings is DENIED.

The Clerk of Court is respectfully directed to terminate Dkt. 29.

SO ORDERED.

Dated: September 26, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge